**GEORGE F. PETTINOS, Inc., v. THOS. & JNO. BROCKLEBANK, Limited.**

No. 61 of 1942.

District Court, E. D. Pennsylvania.

Aug. 9, 1944.

Conlen, LaBrum & Beechwood, by George E. Beechwood, all of Philadelphia, Pa., for plaintiff.

Drinker, Biddle & Reath, of Philadelphia, Pa., and Lord, Day & Lord, by Charles W. Merritt, all of New York City, for defendant.

GANEY, District Judge.

As has been indicated, this is an action for an alleged breach of contract of carriage by the ship owner of five hundred bags of plumbago shipped from Colombo, Ceylon, to Philadelphia. By·reason of war time expediency, the British Admiralty directed the vessel to proceed to the port of Baltimore for discharge of its cargo, rather than the port of Philadelphia, and the cargo was there discharged and placed on a boat of the Ericcson Line and later transferred to Philadelphia. It is well settled law as stated in Pacific Coast S.S.Co. v. Bancroft-Whitney Co., 9 Cir., 94 F. 180, 195: "That where merchandise is shipped, and the usual bill of lading given, promising to deliver the same in good order, the dangers of the sea excepted, and they are found to be damaged, the onus probandi is upon the owner of the vessel to show that the injury was occasioned by one of the excepted causes." This is in conformity with the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., which requires the carrier have the burden of showing the injury was one of the excepted perils of the act.

In the instant case the respondent claims that it is excused from any liability herein by attempting to bring itself within subsection (2) (m) of Sec. 1304 of the Carriage of Goods by Sea Act, which relieves the carrier from "wastage in bulk or weight or any other loss or damage arising from inherent defect, quality, or vice of the goods." It is the contention of the respondent that the proximate cause of the contamination or shortage, if any here shown, was due to the bursting of the bags which was caused by the inherent defect or vices of the plumbago. However, the respondent has not met the burden cast upon him to prove that the bags burst from this excepted peril, to wit, the inherent defect or vice of the goods, as the rotting of the bags might have been caused by the sweating of hemp which was in No. 5 'tweendeck as it was testified to, that hemp is given to sweating on voyages and it might well have been that the dampness caused by such a tendency could have produced the situation here brought about or it is quite possible that dampness in ventilation could have produced the result here. At any rate there was no positive testimony that plumbago·has inherent vices or defects such as sweating which would cause the bags to rot at the particular spot at which it did. As set forth in The S. S. Asturias,

D.C., 40 F.Supp. 168, 174: "The obligation of the carrier is not limited merely to the careful stowage of the cargo, but also to 'keep, care for, and discharge the goods carried' and if a cargo shipped in good condition is delivered damaged in a manner preventible by reasonable precaution, the burden to show exemption from liability rests upon the carrier. Section 1304[2] (q), supra."

As I have indicated I do not feel the respondent here has met the burden cast upon it.

Another contention pressed by the respondent was that since there was no showing by the libellant by actual testimony at Colombo, that the bags contained only plumbago and were not in any wise contaminated with manganese, that it is quite as probable that manganese was in the bags when shipped at Colombo as it is that they were contaminated in the rebagging at Baltimore. However, subsection (4) of 1303 of the Act, supra, provides as follows:

"Such a bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described in accordance with paragraphs (3) (a), (b), and (c), of this section."

Accordingly, it would seem that the recitation in the bill of lading that the material shipped was plumbago and that it was received in apparent good order and condition at the point of shipment, to wit, Colombo, would be prima facie evidence that it was plumbago and that it was received in good order and condition. No direct testimony was offered to rebut this presumption and it was buttressed by Captain Campbell who made the survey on behalf of the carrier and he said that when he examined the plumbago and ordered it rebagged that he examined the plumbago as it was in stowage, felt it with his hands, as it was his first experience with plumbago and that he saw no manganese-ore in the plumbago at all. Accordingly, I think there was sufficient testimony to show the plumbago was contaminated with manganese-ore at the port of Baltimore.

The respondent contends that it is not sufficient to show that the goods were received in apparent good order and condition and has cited The Dondo, D.C.S. D.N.Y., 287 F. 239, 1923 A.M.C. page 19, and The Muskegon, D.C.S.D.N.Y., 10 F. 2d 817, 1924 A.M.C. page 1512, and Monnier v. United States (Lake Ellendale), D. C.E.D.N.Y., 16 F.2d 812, 1925 A.M.C. page

**104**

982, in all of which it was held by the court that it was necessary to prove that the shipment, which was subject to decay and putrescence, was in sound condition at the time of shipping and that in those cases, it was not sufficient to show that the shipment was received in apparent good order and condition. However, the distinction between these cases and the instant case is not in the inherent quality of the goods shipped, which might be involved if there was a claim for damages or the decay thereof, but here there is an attempt to make these cases applicable where complaint made is not for decay of the goods themselves but their contamination with an alien substance to wit: manganese-ore. Accordingly, I do not think them applicable to the factual basis here obtaining. The manganese-ore which was of commercial quality, the same kind which was stowed beneath the bags of plumbago and which was found in the plumbago at its destination was, I hold, there, by reason of the shoveling up of some of the manganese-ore which had pyramided on the hatchway, in the process of rebagging it.

■ I also hold that the libel should be amended to include a claim for shortage, although at the trial of the case I was not inclined so to do, for the reason that while the complainant had notice of the shortage before filing his libel, he did not include it as part of his claim and also for the further reason that during the trial of the complainant's case, he affirmatively abandoned a claim for shortage and only insisted on it again at the close of his case when he asked that the libel be amended to conform to the pleadings. However, in view of the extreme liberality permitted the court in allowing amendments, I am inclined to allow the amendment in order to prove a claim for shortage as upon a re-reading of the record, I find there was a weighing at Philadelphia which showed a discrepancy between it and the typewritten weight shown on the bill of lading. While there is a printed statement, "weight, content and value unknown" on the bill of lading, there is a typewritten recitation of the weight at the time it was received and I feel that the typewritten statement should be controlling as to the weight, and also as being in accordance with the Carriage of Goods by Sea Act, supra, subsections (3, 4) of Sec. 1303.

A decree may be entered in favor of the libellant and against the respondent.