SPANISH AMERICAN SKIN COMPANY, Libelant-Appellee,

v.

THE FERNGULF, her engines, boilers, tackle, etc., and THE A/S GLITTRE, Respondent-Appellant.

No. 200, Docket 24375.

United States Court of Appeals Second Circuit.

Argued Feb. 7, 1957.

Decided March 8, 1957.

**552**

Hill, Rivkins, Middleton, Louis & Warburton, New York City (David L. Maloof, New York City, of counsel), for libelant-appellee.

Haight, Gardner, Poor & Havens, New York City (Tallman Bissell and Karl V. Kerth, New York City, of counsel), for respondent-appellant.

Before CLARK, Chief Judge, MEDINA, Circuit Judge, and SMITH, District Judge.

J. JOSEPH SMITH, District Judge.

This is an appeal in admiralty from a decree holding a shipowner liable for shortage in weight of a shipment of skins.

Libelant-appellee, Spanish-American Skin Company of Gloversville, New York, contracted to buy 500 dozen sheepskins, to weigh between 12,000 and 15,000 pounds, from a seller at Lagos, Nigeria. Payment was to be by letter of credit, in its final form calling for on-board bills of lading, commercial and consular invoices, certificate of origin, specifications and a government certified weight list. 60 bundles of sheepskins were delivered to the ship's agent at Lagos and placed in a lighter belonging to the carrier, from which they were loaded on the ship three days later. There was no testimony as to the supervision of the lighter during the three days. After loading on the ship the shipper was given an on-board bill of lading describing the cargo as follows:

"Received, in apparent good order and condition from Messrs. Adeakinsanya and Sons: . . .

Shipper's Description of Goods:
Shipper's Weight

| Marks | Number of Packages | Description | Gross Weight | |
|---|---|---|---|---|
| SASCO | 60 | Bags Genuine Sokoto | Gross | T6.9.0.8 |
| 1/60 | | Origin Sheepskins | Tare | —2.— |
| New York | | 1st Quality | Nett | 6.8.2.8" |

"Shipped on Board"

The bill of lading also bore a rubber-stamped imprint "Steamer not responsible for weight, quality or condition of contents." The bill of lading provided that the terms of the Carriage of Goods by Sea Act should apply prior to loading on the vessel, upon receipt of the goods by the carrier. Freight was based on

a shipment of 6.4535 tons. The skins were not weighed by the ship, although weighing facilities were available at Lagos Customs. When delivered at Gloversville, New York, the shipment was found to consist of 60 bundles of sheepskins weighing 2,305 pounds. There was some intimation in the evidence that the government weight list furnished by the shipper may have been forged. It was conceded that the bundles were not tampered with subsequent to their loading on the ship at Lagos but not that there had been no tampering after loading on the lighter. Judge Dawson under the Carriage of Goods by Sea Act found for the libelant to recover of the ship and its owner damages for the shortage of the skins with interest from the date of delivery to the ship, and costs, amounting in all to $9,939.96, holding that the bill of lading was prima facie evidence of the weight of skins received by the carrier.

Two errors are claimed on this appeal, the ruling that the bill of lading was prima facie evidence of the weight of the shipment received by the carrier, and the ruling that this prima facie evidence had not been effectively rebutted.

The Carriage of Goods by Sea Act of 1936, 46 U.S.C.A. §§ 1300–1315, which was adopted to implement the Hague Convention on ocean shipping of 1924, governs the rights of the parties here. Sections 1303(3), (4) and (5) provide as follows:

"(3) After receiving the goods into his charge the carrier, or the master or agent of the carrier, shall, on demand of the shipper, issue to the shipper a bill of lading showing among other things—

* * * * * *

"(b) Either the number of packages or pieces, or the quantity or weight, as the case may be, as furnished in writing by the shipper.

"(c) The apparent order and condition of the goods: Provided, that no carrier, master, or agent of the carrier, shall be bound to state

or show in the bill of lading any marks, number, quantity, or weight which he has reasonable ground for suspecting not accurately to represent the goods actually received, or which he has had no reasonable means of checking.

"(4) Such a bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described in accordance with paragraph (3) (a), (b), and (c), of this section * * *

"(5) The shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity, and weight, as furnished by him; and the shipper shall indemnify the carrier against all loss, damages, and expenses arising or resulting from inaccuracies in such particulars. The right of the carrier to such indemnity shall in no way limit his responsibility and liability under the contract of carriage to any person other than the shipper."

Appellant's argument on the first point is based on the fact that Section 1303(3) (b) requires that the bill of lading show either number or weight, not both. It contends that a bill showing both, as furnished by the shipper, might be modified by a reservation as to one, in this case weight, making the bill prima facie evidence only as to the other, in this case number. Appellant points to cases prior to the Act and to cases under the British Act permitting such reservations. Such reservations, however, if permitted are certain to lessen the value of bills of lading for use in the financing of commerce. The Act endeavors to provide uniformity in order to increase the currency of these documents. It specifically provides a method for avoiding carrier liability for false information given by the shipper, by not stating it in the bill. 46 U.S.C.A. § 1303(3) (c) supra. The carrier must utilize that method, rather than the quite general reservation attempted here. The purpose of the Act to promote uniformity

and negotiability of the ocean bills of lading includes a purpose to eliminate the practice of rubber stamp exceptions, limiting carrier liability. See Hearings before House Committee on Merchant Marine and Fisheries on the bill S1152, 74th Congress, 2d Session at p. 29

"The Chairman (Mr. Bland of Virginia). My recollection is that at previous hearings before this committee, sample copies of ocean bills of lading were presented and in some cases there were rubber-stamp exemptions that were in such small print that you would have to get a microscope or magnifying glass in order to read them, whereby the steamship owners had exempted themselves from certain liabilities. All of those will be removed by this bill, as I understand it?

"Mr. Barber. Yes, sir; the use of the uniform bill of lading will be obligatory."

and see page 7, House Committee Report No. 2217 on the bill S1152, 74th Congress, which became the Carriage of Goods by Sea Act.

"The uniformity and simplification of bills of lading will be of immense value to shippers who will be relieved of the necessity of closely examining all bills of lading to determine the exceptions contained therein to ascertain their rights and responsibilities; to underwriters who insure the cargo and are met with the same difficulties; and to bankers who extend credit upon the bills of lading."

 Judge Dawson's view that the carrier is prima facie liable for failure to deliver a shipment of the weight set forth in the bill of lading, regardless of the attempted reservation, is supported by the Congressional purpose as well as the language of the Act. The district judges who have met somewhat similar problems since the enactment of the Act appear to reach the same result. Cf. George F. Pettinos, Inc., v. American Export Lines, Inc., D.C.E.D.Pa., 68 F. Supp. 759; George F. Pettinos, Inc., v. Thos. & Jno. Brocklebank, Ltd., D.C.E. D.Pa., 65 F.Supp. 102; St. John & Co., Inc., v. S. S. Flying Spray, D.C.S.D.N.Y., 149 F.Supp. 737. We conclude that Judge Dawson was correct in holding that the recitation of both number of bundles and weight in the bill of lading furnished prima facie proof of receipt by the carrier of skins of both the number and weight recited, regardless of the statement contained in the rubber-stamped imprint on this bill.

 On the second point, appellant's claim that the prima facie proof of weight received was effectively rebutted, appellant closes its eyes to the state of the proof. It relies on the concession that there was no tampering with the bundles after loading on the ship, and testimony of its employe as to usual practice of locking the lighters. Appellant ignores the lack of any concession that there was no pilferage of the skins while in its possession for three days in the lighter, its failure to produce any evidence as to the locking or guarding of the lighter on the occasion in suit, the admitted unreliability of its African employes, and the positive evidence of tampering in the photographs of the bundles and the deposition of the witness Cole. Judge Dawson's holding that the prima facie evidence of weight received had not been rebutted is clearly not erroneous.

Affirmed.