451 F.2d 763
 In the Matter of: The COMPLAINT AND PETITION OF
INTERNATIONAL MARINE DEVELOPMENT CORP., a Liberian Corp., as
Owners of the SS HULDA, in a Cause of Exoneration from or
Limitation of Liability, Civil and Maritime.
PRESIDENT OF INDIA and the India Supply Mission, Claimant-Appellant,
v.
INTERNATIONAL MARINE DEVELOPMENT, a Liberian Corp., Appellee.
 No. 71-2337 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 Nov. 22, 1971.
 
 C. W. Ford, Pascagoula, Miss., Robert E. Meshell, Baker, Nelson, Williams & Mitchell, New York City, for claimant-appellant India Supply Mission.
 E. S. "Ned" Nelson, Pascagoula, Miss., George F. Wood, Mobile, Ala., Thomas L. Jones, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., Bryan, Gordon, Nelson & Allen, Pascagoula, Miss., Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for appellee.
 Before GEWIN, GOLDBERG and DYER, Circuit Judges.
 DYER, Circuit Judge:
 
 
 1
 The question posed in this appeal is whether a vessel owner is under a duty to transship, salvage or off-load and redeliver cargo aboard a vessel after termination by reason of frustration of a charter party contract of private carriage. The district court, D.C., 328 F.Supp. 1316, held that the cargo owner was not entitled to recover. We affirm.
 
 
 2
 The facts are undisputed. On June 19, 1969, appellant, India Supply Mission, entered into a voyage contract of charter party with appellee, International Marine Development Corp., owner of the S.S. HULDA, to carry a cargo of bagged urea from a port of the United States Gulf Coast to ports in India. The vessel arrived at Gulfport, Mississippi, on August 11, 1969, and India began loading the following day. By August 17, 1969, 93,132 bags of urea had been loaded for which a Mate's Receipt was issued. That night hurricane Camille struck Gulfport, broke loose the HULDA and cast her onto the beach where she was hopelessly stranded.
 
 
 3
 International notified India that the constructive total loss of the vessel prevented the performance of the voyage and that the cargo was available for removal by India at its risk and expense. After putting International on notice that it would act to preserve the cargo and hold International liable for all costs expended, India engaged shore contractors who boarded the beached HULDA and with electrical shoreside generators operated the vessel's dead cargo runner and gear. The entire cargo of bagged urea was subsequently discharged in good condition and transshipped to India.
 
 
 4
 International commenced the proceeding below by the filing of a petition for exoneration from or limitation of liability pursuant to the Limitation of Liability Act, 46 U.S.C.A. Sec. 183 et seq. India filed a claim for reimbursement for expenses incurred in discharging, transshipping and salving the cargo that was on the HULDA. The district court granted International's petition for exoneration from liability and denied the relief sought by India.
 
 
 5
 There are significant facts conceded or not seriously controverted by India. The stranding of the HULDA was the result of hurricane forces without fault on the part of the vessel or its owners. The cargo of urea was non-perishable and was transshipped in good condition. The cargo was aboard the vessel under a charter party contract of private carriage. No freight was due from the shipper to the vessel and none was paid. The cargo was loaded, stowed and trimmed and was to be discharged by India free of expense and risk to the HULDA.
 
 
 6
 India maintains that, as a matter of law, International had the duty to transship the cargo or salvage it. In any event, India argues that International was required to off-load and redeliver the cargo to India. Thus India argues that it is entitled to be reimbursed for its transshipping and salvaging expenses. Alternatively, India urges that as a bailor it is entitled to shore-side redelivery and therefore should be reimbursed for the unloading costs.
 
 Transshipment of Cargo
 
 7
 India's reliance upon Harrison v. Fortlage, 1896, 161 U.S. 57, 16 S.Ct. 488, 40 L.Ed. 616 and The MAGGIE HAMMOND, 1869, 76 U.S. 435, 19 L.Ed. 772, to support its argument that a shipowner has a duty to transship cargo where the carrying vessel cannot complete the voyage, is necessarily premised upon the duty of a common carrier. But no ingenious casuistry can convince us that this was common carriage, not private carriage. The cargo was loaded aboard the HULDA under a charter party which did not incorporate the provisions of the Carriage of Goods by Sea Act, 46 U.S.C.A. Sec. 1300 et seq. A Mate's Receipt was delivered to indicate the quantity of cargo aboard, and no bills of lading were issued. Under these circumstances COGSA does not apply, Knauth, American Law of Ocean Bills of Lading, p. 178 (4th ed. 1953), and the carriage is private. This being so, "the parties may contract pretty much as they please, especially if a seaworthy vessel is furnished," The Monarch of Nassau, 5 Cir. 1946, 155 F.2d 48, 50, "and risks of damage may be adjusted in any manner specified by the charter," Horn v. Cia de Navegacion Fruco, S.A., 5 Cir. 1968, 404 F.2d 422, 429, cert. denied 394 U.S. 943, 89 S.Ct. 1272, 22 L.Ed.2d 477. See also Commercial Molasses Corp. v. New York Tank Barge Co., 1941, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89.
 
 
 8
 There is no dispute that the HULDA was seaworthy and was not accountable for the stranding as the result of Camille. The vessel had no obligation under the charter party to load and discharge at its expense. India produced no evidence to show that damage by way of increased costs in transshipment of the cargo proximately resulted from a breach of contract by International. Commercial Molasses, supra.
 
 Salvage
 
 9
 After India demanded and International refused to remove the bagged urea aboard the beached HULDA, shore contractors by agreement with India supplied power to the vessel's winches and the cargo was discharged. India argues that it is entitled to be reimbursed for the sums it expended under the agreement as contract salvage.
 
 
 10
 While it may be argued that the cargo was in peril and that the action the cargo owners took was necessary and was not contractually required, it does not follow that International is obligated for salvaging expense. The liabilities of ship and cargo to the salvor are several. "If the service is rendered to cargo alone * * * then cargo solely must make good the award." Norris, The Law of Salvage, p. 331 (1st ed. 1958). As International puts it, "charterer-cargo owner cannot improve his position by acting as his own salvor."
 
 Vessel Owner's Responsibility to Redeliver
 
 11
 India asserts that after the HULDA was breached it was the duty of International to off-load, warehouse and redeliver the cargo to India. India relies alternatively upon the principles applicable to common carriers and the obligatory responsibilities of a common law bailee. Having found that private not common carriage is here involved, we direct our attention to India's latter contention.
 
 
 12
 We agree with India that, under common law bailment principles, International was obligated to safely care for the cargo. We disagree that the vessel was obligated to pay for discharge of the cargo to shore and the warehousing or reloading of it.
 
 
 13
 It is conceded that the cargo suffered no damage. It was transshipped in good condition. India's stevedores, who had loaded the HULDA, also discharged and reloaded the cargo for its on-shipment. The cargo was not withheld by International. On the contrary, it was made available as were the physical facilities of the vessel so far as possible under the extant circumstances.
 
 
 14
 The general principle that the manner of a bailee's redelivery should be in accordance with the contract stipulations is too well settled to belabor. 8 C.J.S. Bailments Sec. 37b. The charter party sub judice provided that the cost of discharging cargo was to be borne by India free of expense and risk to the vessel. The fact that International was prevented by the hurricane from performing under the charter party does not shift the obligation of cargo handling expressly agreed to by the parties. We hold that there was full compliance by International of the charter party contract giving rise to the bailment.
 
 
 15
 Finding no merit in the appeal the judgment of the district court is
 
 
 16
 Affirmed.
 
 
 
 *
 Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I