**WESTWAY COFFEE CORPORATION,**
**Plaintiff-Appellee,**

v.

**M. V. NETUNO, her engines,**
**boilers, etc.**

**and**

**Appeal of COMPANHIA DE**
**NAVEGACAO MARITIMA**
**NETUMAR, Defendant.**

**No. 716, Docket 81–7741.**

United States Court of Appeals, Second Circuit.

Argued Feb. 11, 1982.
Decided March 18, 1982.

Michael J. Carcich, New York City (Cichanowicz & Callan, New York City, on the brief), for defendant-appellant.

John E. Cone, Jr., New York City (Theodore S. Cunningham and Bigham, Englar, Jones & Houston, New York City, on the brief), for plaintiff-appellee.

Before TIMBERS, NEWMAN and WINTER, Circuit Judges.

NEWMAN, Circuit Judge:

Defendant-appellant Companhia De Navegacao Maritima Netumar ("Netumar") appeals from a judgment of the District Court, 528 F.Supp. 113, for the Southern District of New York (Leonard B. Sand, Judge) in favor of plaintiff Westway Coffee Corporation ("Westway") in this admiralty action for partial non-delivery of coffee transported from Brazil to New York. Despite Netumar's contention that it did not cause the loss, we conclude that the District Court was entitled to find that Netumar is responsible to Westway for the loss, and we therefore affirm.

Westway (the consignee) ordered 1710 cartons of coffee from Dominium, S.A. of Sao Paulo, Brazil (the shipper). Dominium loaded the 1710 cartons into cargo containers under the supervision of the Brazilian Coffee Institute, a government agency whose officer certified that he had personally inspected and counted the cartons going into the containers. Dominium, which had determined the weight of the coffee, sealed and padlocked the containers. The containers were then driven from Sao Paulo to the port of Santos, where they were stored in a customs bonded warehouse prior to loading onto the M.V. Netuno, a vessel owned by Netumar (the carrier). When weighed upon their arrival at the warehouse, the containers had the same weight as when they left Sao Paulo. Netumar

does not claim to have reweighed the containers when they were then loaded on board the vessel. Netumar issued an on-board bill of lading listing the gross weight of the containers filled with coffee (76,608 kilos) and the quantity of cartons within them (1710). The bill of lading was also marked "Said to Contain (STC)," "Shipper's Load and Count," and "Contents of Packages Are Shipper's Declaration." Two or three days after the Netuno's arrival in New York, the padlocked and sealed containers were opened, revealing a shortage of 419 cartons or approximately 20 tons of coffee.

Westway duly notified Netumar of the claimed shortage. Westway had previously received a sight draft for the purchase price drawn on Westway by Dominium, accompanied by the bill of lading. After reviewing the bill of lading, Westway authorized its bank to pay the sight draft when it became due. The draft was paid four months later.

■ Under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300–1315 (1976), a consignee establishes a *prima facie* case for recovery from a carrier by proving (1) delivery of the goods to the carrier in good condition and (2) outturn by the carrier in damaged condition. *Caemint Food, Inc. v. Brasileiro,* 647 F.2d 347, 352 (2d Cir. 1981); *Vana Trading Co. v. S.S. "Mette Skou,"* 556 F.2d 100, 104 (2d Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977); *Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1014 (2d Cir. 1972). When the consignee proves its *prima facie* case, the burden shifts to the carrier to show that the loss or damage falls within one of the COGSA exceptions set forth in 46 U.S.C. § 1304(2) (1976). *Vana Trading Co. v. S.S. "Mette Skou," supra,* 556 F.2d at 105.

■ We consider first whether Westway has met the first requirement for establishing a *prima facie* case for recovery: receipt of the coffee by Netumar in good condition. Under COGSA § 3(4), 46 U.S.C. § 1303(4) (1976),[1] the bill of lading issued by Netumar constitutes *prima facie* evidence[2] that coffee of the weight indicated on the bill of lading was received by Netumar from the shipper. *Spanish American Skin Co. v. The Ferngulf,* 242 F.2d 551 (2d Cir. 1957); *cf. Maddow Co. v. S.S. Liberty Exporter,* 569 F.2d 1183, 1185 (2d Cir. 1978). It has long been established that the weight listed on a bill of lading is *prima facie* proof of receipt by the carrier of that weight regardless of attempted reservations like "said to weigh," "shipper's load and count," and "contents of packages are shipper's declaration." *Portland Fish Co. v. States Steamship Co.,* 510 F.2d 628, 633 & n.15 (9th Cir. 1974); *Spanish American Skin Co. v. The Ferngulf, supra,* 242 F.2d at 553–54; *American Trading Co. v. The Harry Culbreath,* 187 F.2d 310, 313 (2d Cir. 1951); *Woodhouse Drake & Carey, Inc. v. S.S. "Hellenic Challenger,"* 472 F.Supp. 31, 33–34 (S.D.N.Y.1979). It is true that under the explicit wording of 46 U.S.C. § 1303(3)(c) (1976) as well as that of the bill of lading itself, a clean bill of lading attesting to the "apparent order and condition of the goods" will not constitute a *prima facie* showing of

---

1. COGSA § 3(3), (4), 46 U.S.C. § 1303(3), (4) (1976) provides:

   (3) After receiving the goods into his charge the carrier ... shall, on demand of the shipper, issue to the shipper a bill of lading showing among other things—

   . . . . .

   (b) Either the number of packages or pieces, or the quantity or weight, as the case may be, as furnished in writing by the shipper.

   (c) The apparent order and condition of the goods: *Provided,* That no carrier ... shall be bound to state or show in the bill of lading any marks, number, quantity, or weight which he has reasonable ground for suspect-

   ing not accurately to represent the goods actually received, or which he has had no reasonable means of checking.

   (4) Such a bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described in accordance with ... this section ....

2. The unfortunate reappearance of the *"prima facie"* terminology referring to the first of two components of plaintiff's claim (delivery of the goods to the carrier in good condition) should not be confused with the overall *"prima facie"* case for recovery that plaintiff is seeking to establish by proof of both components.

the absence of concealed, internal conditions that were not "apparent" to the external observer. *Compare Caemint Food, Inc. v. Brasileiro, supra,* 647 F.2d at 352 (moldy corned beef), *and The Niel Maersk,* 91 F.2d 932 (2d Cir.) (decayed sardine meal), *cert. denied,* 302 U.S. 753, 58 S.Ct. 281, 82 L.Ed. 582 (1937), *with The Carso,* 53 F.2d 374, 377 (2d Cir.) (stains from maggot-infested cheese must have been observable to ship's officers), *cert. denied,* 284 U.S. 679, 52 S.Ct. 140, 76 L.Ed. 574 (1931). But there is no similar limitation in COGSA regarding the recording of weights in bills of lading. Once the carrier lists the weight of the goods (which normally will be readily verifiable by the carrier), he represents that he has no reasonable ground for suspecting that the weight of the goods actually received varies from the listed weight and that he has reasonable means of checking the weight, 46 U.S.C. § 1303(3)(c) (1976). This is enough for a *prima facie* showing of receipt of the listed weight. 46 U.S.C. § 1303(4) (1976). As Netumar has not adduced sufficient evidence to rebut this *prima facie* showing,[3] it was not error for the District Court to find that Westway had proved the weight of the containers on receipt by Netumar to be 76,708 kilos.

Regarding the second requirement for establishment of a *prima facie* case for recovery from Netumar, it is uncontroverted that the quantity of cartons of coffee at outturn was deficient. Netumar suggests that this does not rule out the possibility that the reduced number of cartons in the containers were "weighted" in some fashion, prior to receipt by Netumar, so as to conceal the shortfall in quantity of cartons. If this were true, there would be no varia-

tion in weight at outturn from that in the bill of lading. However, there was no evidence of the presence of weights or weighty substances, other than coffee, in the containers. We recognize that Westway's proof of missing cartons does not conclusively rule out hypothetical possibilities like that posed by Netumar, but nonetheless the District Court did not err in concluding that Westway had proved that it was more likely than not that there was a shortfall in weight at outturn.[4] Westway's proof regarding the weight of the coffee at delivery and outturn established a *prima facie* case for recovery from Netumar.[5]

We agree with the District Court that Netumar's general security measures on its vessel do not satisfy its burden of proof for establishing any defense that might be available under COGSA's catchall exception, 46 U.S.C. § 1304(2)(q) (1976). Finally, Westway was under no obligation to mitigate its damages once it found out about the missing coffee by stopping payment on the sight draft from Dominium that it had accepted. *Cf. Cummins Sales & Service, Inc. v. London & Overseas Insurance Co.,* 476 F.2d 498, 501 (5th Cir.), *cert. denied,* 414 U.S. 1003, 94 S.Ct. 359, 38 L.Ed.2d 239 (1973); *The Carso,* 43 F.2d 736, 745 (S.D.N.Y.1930), *aff'd in part, rev'd in part on other grounds,* 53 F.2d 374 (2d Cir.), *cert. denied,* 284 U.S. 679, 52 S.Ct. 140, 76 L.Ed. 574 (1931). A consignee need not subject itself to the risk of a lawsuit by the shipper for non-payment when COGSA permits it to recover from the carrier for non-delivery. If the shipper is nonetheless at fault, the carrier, having issued what it later determines to be an incorrect bill of lading, may recover from the shipper. 46

3. We need not decide whether Netumar is in any event estopped from offering evidence to rebut the *prima facie* showing of receipt of the listed weight, established by the bill of lading (on which Westway, the consignee, relied). *See Portland Fish Co. v. States Steamship Co., supra; Demsey & Associates, Inc. v. S.S. Sea Star, supra,* 461 F.2d at 1015; *The Carso, supra.*

4. Had Netumar weighed the containers at loading and listed that weight on the bill of lading, and then weighed them again at unloading and

found the same weight, it would have a defensible position at least as to a claimed shortage of weight.

5. Because Westway has made out a *prima facie* case for recovery by establishing a discrepancy in the weight of the coffee at delivery and outturn, we need not consider whether a *prima facie* case could also be established by proof of a discrepancy in the quantity of cartons of coffee at delivery and outturn.

U.S.C. § 1303(5) (1976). Netumar's remaining contentions are without merit. We express no views regarding the merits of Netumar's claim against the shipper.

Judgment affirmed.