**JUDY–PHILIPPINE INC., Plaintiff,**

v.

**S/S VERAZANO BRIDGE, S/S LALANDIA, S/S HYUNDAI COMMANDER, their engines, boilers, tackle, etc., Hyundai Merchant Marine Co., Ltd., Pac Bridge Shipping, Ltd., Defendants.**

**HYUNDAI MERCHANT MARINE CO. LTD., Defendant and Third–Party Plaintiff,**

v.

**LAND BRIDGE TERMINAL, INC., Third–Party Defendant.**

No. 89 Civ. 7112 (RWS).

United States District Court, S.D. New York.

Dec. 23, 1991.

Kingsley & Kingsley, Hicksville, N.Y. (Harold M. Kingsley, of counsel), for plaintiff.

Chalos, English & Brown, P.C., New York City (William M. Cassarini, of counsel), for defendant Pac Bridge Shipping Ltd.

Cichanowicz, Callan & Keane, New York City (Deborah R. Reid, of counsel), for defendant Hyundai Merchant Marine Co. Ltd.

Schindel, Cooper & Farman, New York City (Jean M. Gardner, of counsel), for defendant Land Bridge Terminal, Inc.

## OPINION

SWEET, District Judge.

Plaintiff Judy–Philippine, Inc. ("Judy–Philippine"), defendants Hyundai Merchant Marine Co., Ltd. ("Hyundai"), and Pac Bridge Shipping, Ltd. ("Pac Bridge"), and third-party defendant Land Bridge Terminal, Inc. ("Land Bridge") have all moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Judy–Philippine's motion for summary judgment is granted as to liability and is otherwise denied. The motions for summary judgment filed by Hyundai, Pac Bridge, and Land Bridge are denied.

*The Parties*

Judy–Philippine is a New York corporation with its principal place of business in New York. It is primarily an importer of children's garments.

S.S. Verazano Bridge, S.S. Lalandia, and S.S. Hyundai Commander, their engines, boilers, tackle, etc., are ocean-going cargo vessels owned and operated by Hyundai.

Hyundai is a foreign corporation with an office and place of business in care of its general agent, Hyundai Merchant Marine (America) Inc., in Gardena, California, and Fort Lee, New Jersey.

Pac Bridge is a foreign corporation operating as a Non Vessel Owning Common Carrier.

Land Terminal is a foreign corporation with an office and place of business in Secaucus and North Bergen, New Jersey.

*Proceedings*

Judy–Philippine filed this action against the S.S. VERAZANO BRIDGE, S.S. HYUNDAI COMMANDER, S.S. LALANDIA, their engines, boilers, tackle, etc., Hyundai and Pac Bridge (collectively the "Defendants") under the Carriage of Goods by Sea Act, 46 U.S.C. app. § 1300 *et seq.* on October 25, 1989. An amended complaint was filed on October 27, 1989.

Hyundai filed an answer to the Amended Complaint on August 4, 1990. The answer included a cross-claim against codefendant Pac Bridge. Pac Bridge filed its answer on August 8, 1990, which asserted a cross-claim against Hyundai.

On August 6, 1990, Hyundai filed a third-party complaint against Land Bridge.

Land Bridge answered on September 17, 1990.

Discovery was had and on June 28, 1991, Hyundai moved for summary judgment dismissing Judy–Philippine's complaint against it. Land Bridge filed it motion for summary judgment against Judy–Philippine and Hyundai on July 12, 1991. On November 1, 1991, Judy–Philippine filed an amended notice of motion seeking summary judgment against Hyundai and Pac Bridge. Finally, Pac Bridge's notice of motion seeking dismissal of Judy–Philippine's complaint against it was filed on November 5. Oral argument was heard on November 7, 1991, and the motions were considered submitted as of that date.

*The Facts*

Judy–Philippine contracted to purchase three shipments of children's garments from its supplier in Hong Kong, the PiRa Company ("PiRa"). The clothes were made by PiRa's factory in Hong Kong, Accoship Limited, and were loaded into containers and sealed at the PiRa factory. Judy–Philippine arranged with Pac Bridge for the transport of the containers to the Port of New York.

The containers were each delivered to Pac Bridge's facilities in Hong Kong. Pac Bridge issued clean bills of lading for the clothing. The bills of lading each stated, in part:

Container: HDMU–4036180
 Seal: 58202
 CY/CY
 On Board Date 23 Nov 88
 Bill of Lading 69111495
 100 Ctns., 1,365 Kgs.
 Shipper's Load & Count
 STC
 Bill of Lading 69111496
 225 Ctns., 2915 Kgs.
 Shipper's Load & Count
 STC
 Bill of Lading 69111497
 175 Ctns., 3,340 Kgs.
 Shipper's Load & Count
 STC
Container: NLSU–6026800

Seal: 58781
CFS/CY
On Board Date 05 Oct 88
Bill of Lading 69110524
 19 Ctns., 430 Kgs.
Bill of Lading 69110525
 56 Ctns., 1260 Kgs.
 Shipper's Load & Count
 STC
Bill of Lading 69110526
 100 Ctns., 2230 Kgs.
 Shipper's Load & Count
 STC
Bill of Lading 69110527
 42 Ctns., 920 Kgs.
 Shipper's Load & Count
 STC
Bill of Lading 69110528
 150 Ctns., 3340 Kgs.
 Shipper's Load & Count
 STC
Container: HDMU–4064685
 Seal: 43345
 CY/CY
 On Board Date 13 Oct 88
 Bill of Lading 69110703
 150 Ctns., 3000 Kgs.
 Shipper's Load & Count
 STC
 Bill of Lading 69110704
 75 Ctns., 1690 Kgs.
 Shipper's Load & Count
 STC
 Bill of Lading 69110705
 50 Ctns., 945 Kgs.
 Shipper's Load & Count
 STC
Container: KMTU–4011629
 Seal: 7820
 On Board Date 13 Oct 88
 Bill of Lading 69110705
 400 Ctns., 7820 Kgs.
 Shipper's Load & Count
 STC

Pac Bridge then contracted with Hyundai to ship the containers from the Port of

Hong Kong to the Port of New York. Hyundai also issued clean bills of lading for the containers:

Bill of Lading 32974
 Container: HDMU–4036180
 Seal: 58202
 Ctns. 500, 7620 Kgs.
 CY/CY
 Shipper's Load & Count, STC
 Vessel: Verazano Bridge
 Port of Discharge: Tacoma

Bill of Lading 30579
 Container: NLSU–6026800
 Seal: 58781
 Ctns. 367, 8180 Kgs.
 CY/CY
 Shipper's Load & Count, STC
 Vessel: Lalandia
 Port of Discharge: Long Breach

Bill of Lading 30196
 Container: KMTU–4064685 [sic]
 Seal: 43345
 Ctns. 275, 5635 Kgs.
 Container: KMTU–4011629
 Seal: 7820
 Ctns. 400, 7820 Kgs.
 CY/CY
 Shipper's Load & Count, STC
 Vessel: Hyundai Commander
 Port of Discharge: Long Beach

Hyundai shipped the containers across the Pacific to the West Coast of the United States. There, the containers were offloaded from the three ships and taken across country by rail.

The containers were delivered to Land Bridge's container yard in New Jersey. Upon arrival, Land Bridge personnel recorded that the containers and their seals were intact. The containers were removed from the train and placed in Land Bridge's Yard.

Customs requested to inspect each of the containers. To do so, the containers had to be taken from the yard and brought into a bonded warehouse. There the containers were opened and inspected. Who opened the containers and whether Customs officials were present when this occurred is unclear from the record. After the containers were inspected, they were closed and sealed. The new seals numbers were: container HDMU–4036180: 0471; container NLSU–6026800: 24073; container HDMU–4064685: 0252; container KMTU–4011629: 0302.

The containers were returned to Land Bridge's yard. Judy–Philippine then arranged for a private trucking firm to pick up the containers and deliver them to Judy–Philippine's warehouse in Carteret, New Jersey. When they arrived, the new seals affixed by Customs were still intact, but the ones originally affixed in Hong Kong obviously were not. The following shortages were allegedly noted upon delivery: container HDMU–4036180: 66 cartons worth $14,288.93; container NLSU 6026800: 35 cartons worth $12,363.31; containers HDMU–4064685 and KMTU–4011629: 25 cartons worth $7,862.21.[1]

*Discussion*

"Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). 'As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party.' However, where the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991) (citations omitted). As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991); *see also Bay*, 936 F.2d at 116.

---

**1.** Damage figures are as stated in the Amended Complaint.

I. Liability under the Carriage of Goods by Sea Act

The Carriage of Goods by Sea Act of 1936 ("COGSA") governs the rights and liabilities arising under a bill of lading for the carriage of goods in foreign commerce by sea to or from ports of the United States. 46 U.S.C. app. § 1300. Section 1303 of COGSA provides that:

(3) After receiving the goods into his charge the carrier, or the master or agent of the carrier, shall, on demand of the shipper, issue to the shipper a bill of lading showing among other things—

(a) The leading marks necessary for identification of the goods as the same are furnished in writing by the shipper before the loading of such goods starts, provided such marks are stamped or otherwise shown clearly upon the goods if uncovered, or on the cases or coverings in which such goods are contained, in such a manner as should ordinarily remain legible until the end of the voyage.

(b) Either the number of packages or pieces, or the quantity or weight, as the case may be, as furnished in writing by the shipper.

(c) The apparent order and condition of the goods: *Provided*, That no carrier, master, or agent of the carrier, shall be bound to state or show in the bill of lading any marks, number, quantity, or weight which he has reasonable ground for suspecting not accurately to represent the goods actually received, or which he has had no reasonable means of checking.

(4) Such a bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described in accordance with paragraphs 3(a), (b), and (c), of this section....

■ Under COGSA, "a consignee establishes a *prima facie* case for recovery from a carrier by proving (1) delivery of the goods to the carrier in good condition and (2) outturn by the carrier in damaged condition." Once this is established, the burden shifts to the carrier to show that any loss falls within one of COGSA's exceptions. *Westway Coffee Corp. v. M.V. NETUNO*, 675 F.2d 30, 32 (2d Cir.1982); *see also Leather's Best International, Inc. v. M/V LLOYD SERGIPE*, 760 F.Supp. 301, 308 (S.D.N.Y.1991); *Hartford Fire Insurance Co. v. M/V SAVANNAH*, 756 F.Supp. 825, 828–29 (S.D.N.Y.1991).

■ To meet the first requirement, the consignee only needs to show that a bill of lading was issued by the shipper stating that a certain weight and quantity of goods were accepted. This constitutes prima facie proof of what was received "regardless of attempted reservations like 'said to weigh,' 'shipper's load and count,' and 'contents of packages are shipper's declaration.'" *Westway Coffee*, 675 F.2d at 32. The policy reasons for this are very strong, for, as the Second Circuit has noted, "a negotiable or order bill of lading is a fundamental and vital pillar of international trade and commerce, indispensable to the conduct and financing of business involving the sale and transportation of goods between parties located at a distance from one another." *Berisford Metals Corp. v. S/S SALVADOR*, 779 F.2d 841, 845 (2d Cir.1985) (citing *Pollard v. Reardon*, 65 F. 848, 852 (1st Cir.1895)), *cert. denied*, 476 U.S. 1188, 106 S.Ct. 2928, 91 L.Ed.2d 556 (1986).

■ Judy–Philippine argues that the first requirement is satisfied here through the bills of lading issued by Pac Bridge and Hyundai. The bills all state that a certain number of cartons weighing a certain amount were received on board. No qualification exists on any of the bills of lading showing that either of the carriers had a reasonable ground for suspecting that the figures were not accurate.[2] That the bills state that the figures are STC or "Shipper's Load & Count" is immaterial. The first requirement is met. *Leather's Best*, 760 F.Supp. at 309.

■ Both defendants argue that the containers here were stuffed and sealed by the Judy–Philippine or its agent in Hong

2. See 46 U.S.C. app. § 1303(3)(c).

Kong.[3] The Defendants rely upon a line of cases refusing to impose liability on shippers for damages to goods within sealed containers where there is no sign of external damage to the containers when received by the shipper. *See, e.g., Caemint Food, Inc. v. Brasileiro,* 647 F.2d 347 (2d Cir.1981); *Gill & Duffus, Inc. v. M/V EXPORT CHALLENGER,* 1986 WL 3340 (S.D.N.Y.1986). However, these cases speak to the condition of the goods inside of a sealed container, and not to the weight or contents of a container. They therefore do not apply where it is alleged that a lesser amount of goods were received by the consignee than indicated in the bill of lading. *Westway Coffee,* 675 F.2d at 32–33; *Insurance Company of North America v. S/S GLOBE NOVA,* 638 F.Supp. 1413, 1418 (S.D.N.Y.1986), *rev'd on other grounds,* 820 F.2d 546 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987).

Hyundai also relies on *Pan American Seafood, Inc. v. United States Lines, Inc.,* 443 F.Supp. 13, 14 (S.D.N.Y.) (mem.), *aff'd mem.,* 562 F.2d 38 (2d Cir.1977). In that case, the container at issue was loaded and sealed by representatives of both the plaintiff and the defendant in Panama. It was shipped by the defendant to New York and its seals were still intact when it arrived. Customs officials broke the seals for inspection in the presence of representatives of the plaintiff and the defendant, conducted their inspection, and resealed the container. The container was then transported to the plaintiff. It was received with the new seals still intact, but with a shortage.

The court dismissed the plaintiff's suit brought under COGSA. In doing so, it found that the "carrier delivered … precisely what it received, which was a sealed container. There was thus no negligence

by the defendant, and no loss of goods established by plaintiff." *Id.*

To the extent that *Pan American Seafood* applies to the amounts stated on the bills of lading here, it has been overruled implicitly by subsequent case law. *See Berisford Metals,* 779 F.2d at 847; *Westway Coffee,* 675 F.2d at 32–33.[4] To the extent that it applies to the Customs inspection at issue, it is distinguishable. While representatives of both parties were present when the container was unsealed there, 443 F.Supp. at 14, the same is not true here. *Pan American Seafood* is therefore inapplicable to the present facts.

■ Finally, it is noted that a "carrier is not obliged to open a container sealed by a shipper so as to verify the contents." *Sentinel Enterprises, Inc. v. M.V. SIMO MATAVULJ,* 89 Civ. 3301, slip op. at 9–10, 1990 WL 89362 (S.D.N.Y. June 15, 1990). However, a carrier is obliged to verify, at a minimum, the weight of a container before signing a bill of lading stating that weight. The current record is devoid of any showing that the containers' weights were verified by the defendants at any stage of transport. Both Pac Bridge and Hyundai are therefore estopped from denying that they received containers with the stated weights and contents. *Berisford Metals Corp.,* 779 F.2d at 847; *see also Westway Coffee,* 675 F.2d at 33 n. 4 (defendant would have had a defense if containers were weighed at beginning and end of voyage).

■ The second requirement of a prima facie case can be met by showing that an expected quantity was not received. *Westway Coffee,* 675 F.2d at 33. Judy–Philippine alleges that each of the shipments at issue was deficient by a certain number of cartons when received at its warehouse in New Jersey. That there is a discrepancy between the amount stated on

---

**3.** Most of the bills of lading at issue indicate the containers were carried on a CY/CY basis, meaning that such containers were stuffed and sealed by the shipper and that the carrier received the containers at the carrier's yard in the port of loading and delivered the containers to the consignee at the carrier's yard in the port of discharge.

**4.** Although unclear from the text of the opinion, it is assumed that one or more bills of lading were at issue in *Pan American Seafood* since the case was brought under COGSA. *See* 443 F.Supp. at 14.

the bills of lading and the amount received by Judy–Philippine is sufficient to show damage at outturn. Employees of Judy–Philippine inspected the containers as they arrived and noted the shortages as the containers were unloaded.[5] Absent any evidence suggesting that the containers were not short by the stated amounts when finally received, Judy–Philippine has satisfied the second requirement of a prima facie case as well. *Leather's International*, 760 F.Supp. at 309–10.

Having established a prima facie case, Judy–Philippine is entitled to summary judgment on the issue of liability. Fed.R.Civ.P. 56(c); *see Hartford Fire Insurance*, 756 F.Supp. at 828–29. The defendants have not established any of the rebuttal defenses allowed under COGSA. Hyundai further argues that Judy–Philippine did not rely upon its bills of lading, and that it therefore should not be held liable. Here, however, the bills of lading were relied upon through bank letters of credit. Hyundai is therefore estopped from denying the accuracy of the bills of lading. *Berisford Metals*, 779 F.2d at 847; *Olivier Straw Goods Corporation v. Osaka Shosen Kaisha*, 47 F.2d 878, 879–80 (2d Cir.), *cert. denied*, 283 U.S. 856, 51 S.Ct. 648, 75 L.Ed. 1462 (1931).

The current record does not sufficiently establish what damages should be awarded for an order of summary judgment to be entered. Judy–Philippine alleges that the missing goods were worth $34,514.45 and seeks that amount plus interest.[6] The defendants contest this amount and, absent further evidence on the question of valuation, summary judgment on the issue of damages is not proper at this juncture. *Hartford Fire Insurance*, 756 F.Supp. at 829.

## II. The Cross–Claims

Summary judgment also cannot be granted on the Defendant's cross-claims against one another. First, neither has requested such relief. Second, neither has presented any evidence showing that the shortage did not occur while the containers were in their possession. *Supra.* Which party is ultimately responsible for Judy–Philippine's damages, if any, is still a question of fact precluding summary judgment.

## III. The Third–Party Claim

Finally, Land Bridge's motion for summary judgment is denied.[7] The containers arrived at Land Bridge's facilities with their seals intact and were unsealed for inspection by United States Customs and then resealed. While normally it is difficult to raise an inference of wrongdoing based upon a Customs inspection, *see Gill & Duffus*, 1986 WL at *3, here it is not clear if the containers were opened in the presence of Customs officials or prior to the officials' arrival. *See* Deutsch Deposition 61–62. Even if Land Bridge may be considered a bailee, a question of fact exists concerning whether Land Bridge was negligent in opening the containers outside the presence of Customs officials. Land Bridge's motion for summary judgment is therefore denied.

### Conclusion

For the reasons set forth above, Judy–Philippine's motion for summary judgment is granted in part and denied in part. The summary judgment motions of Hyundai, Pac Bridge, and Land Bridge are denied.

It is so ordered.

---

**5.** This further distinguishes the present case from *Gill & Duffus,* where the containers at issue were not inspected until some time after they were received by the plaintiff. *See* 1986 W.L. at *3.

**6.** The Amended Complaint alleges this amount. Some of the documents submitted by Judy–Philippine to the Court state a different amount.

*See, e.g.,* Memorandum of Law in Support of Plaintiff Judy–Philippine's Motion for Summary Judgment 8 (October 18, 1991) ($66,852.00 plus interest and costs).

**7.** Since this is an admiralty action, Rule 14(c) of the Federal Rules of Civil Procedure applies to the third-party claim.