JUDY–PHILIPPINE INC., Plaintiff,

v.

S/S VERAZANO BRIDGE, S/S LALANDIA, S/S HYUNDAI COMMANDER, their engines, boilers, tackle, etc., Hyundai Merchant Marine Co. Ltd., Pac Bridge Shipping, Ltd., Defendants.

No. 89 Civ. 7112 (RWS).

United States District Court,
S.D. New York.

Oct. 23, 1992.

Kingsley & Kingsley, Hicksville, N.Y. (Harold M. Kingsley, of counsel), for plaintiff.

Cichanowicz, Callan & Keane, New York City (Deborah R. Reid, of counsel), for defendant Hyundai Merchant Marine Co., Ltd.

Chalos & Brown, P.C., New York City (Harry A. Gavalas, William M. Cassarini, of counsel), for defendant Pac Bridge Shipping Ltd.

Schindel, Cooper & Farman, New York City, for third-party defendant Land Bridge Terminal, Inc.

## OPINION

SWEET, District Judge.

Plaintiff Judy–Philippine, Inc. ("Judy–Philippine") has moved to amend its complaint pursuant to Rule 15 and for summary judgment pursuant to Rule 56, Fed. R.Civ.P. For the reasons set forth below, this motion is granted in part and denied in part.

*Prior Proceedings*

In an Opinion dated December 23, 1991, familiarity with which is assumed, *Judy–Philippine, Inc. v. S/S VERAZANO BRIDGE,* 781 F.Supp. 253 (S.D.N.Y.1991), Judy–Philippine's motion for summary judgment on the issue of liability was granted, its motion on the issue of damages was denied, and the summary judgment motions of defendants Hyundai Merchant Marine Co., Ltd. ("Hyundai"), Pac Bridge Shipping, Ltd. ("Pac Bridge"), and third-party defendant Land Bridge Terminal, Inc. ("Land Bridge") were denied.

Specifically, the Court held that:

Judy–Philippine alleges that the missing goods were worth $34,514.45 and seeks that amount plus interest. The defendants contest this amount and, absent further evidence on the question of valuation, summary judgment on the issue of damages is not proper at this juncture.

*Id.* at 260.

The $34,514.45 amount was set forth in Judy–Philippine's Amended Schedule A appended to its Amended Complaint and was calculated as the total damages resulting from the loss of cargo contained in four containers that were shipped across the Pacific to the West Coast of the United States on the S/S VERAZANO BRIDGE, S/S LALANDIA, and S/S HYUNDAI COMMANDER. The following shortages were noted upon delivery to Judy–Philippine's warehouse in Carteret, New Jersey: container HDMU–4036180: 66 cartons worth $14,288.93; container NLSU–6026800: 35 cartons worth $12,363.31; containers HDMU–4064685 and KMTU–4011629: 25 cartons worth $7,862.21.

Judy–Philippine has now moved pursuant to Rule 15(b) for leave to amend the Amended Complaint to reflect its damages in the amount of $66,852.00 and pursuant to Rule 56 for summary judgment in that amount plus interest, asserting that this amended figure represents the sound market value of the goods at destination and conforms to the evidence presented to the Court in support of its previous motion for summary judgment.

In a footnote in the December 23, 1991 Opinion, the Court acknowledged that, although Judy–Philippine alleged $34,514.45 as the amount of its damages in the Amended Complaint of October 27, 1989, "[s]ome of the documents submitted by Judy–Philippine to the Court state a different amount," to wit, "$66,852.00 plus interest and costs." *Id.* at 260 n. 6. This figure was reflected in the market value calculations made by Judy–Philippine's counsel, which were included as an exhibit to its Amended Notice of Motion for Summary Judgment. In addition, Judy–Philippine has offered as documentary evidence in support of this motion a set of price lists from 1989 and 1990 which allegedly specify the prices of the various lost goods. These lists were previously included as an exhibit to its Amended Notice of Motion for Summary Judgment.

According to Judy–Philippine it is entitled by law to the sound market value of the goods at destination in the absence of a factual dispute.

The defendants contest both the appropriateness of employing the market value measure of damages in this case and the amount of damages claimed by Judy–Philippine.

*The Motion to Amend is Granted*

Rule 15(a) provides in relevant part that "a party may amend the party's pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Rule 15(b) states that:

[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment.

■ The amendment sought by Judy–Philippine is intended to make the Amended Complaint conform to the evidence presented in the course of its previous motion for summary judgment, as was noted by the Court at that time. *See id.* at 260 n. 6. This amendment is consistent with the purpose of Rule 15 and should be granted.

In granting a Rule 15(b) motion, the Court must consider any prejudicial effect. Here, the defendants will not be prejudiced by the amendment, because, in light of the disposition of Judy–Philippine's motion for summary judgment set forth below, they will have an opportunity to contest this amended figure in further proceedings.

*The Measure of Damages Under COGSA § 1304(5)*

Two distinct questions are confused in the dispute between Judy–Philippine and the defendants on the issue of damages: one is the method by which that amount is to be calculated, the other is the amount of damages to be awarded. The confusion arises from Judy–Philippine's assertions that the market value method is the only appropriate measure of damages in a lost cargo case and that the submission of claim bills and price lists establishes an injured party's loss. The confusion is compounded by the defendants' objection to the market value method employed by Judy–Philippine on the sole ground that it yields an excessively large damage figure.

■ The rights and liabilities of the Judy–Philippine, Pac Bridge as carrier, and Hyundai as owner and operator of the ships in question are governed by the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. §§ 1300–15.[1] In regulating ocean bills of lading under COGSA, Congress created federal law governing the terms of transport of goods by sea. COGSA § 1304(5) sets forth the liability of a carrier and ship as follows:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

46 U.S.C.App. § 1304 (1976, 1992). COGSA restricts both a carrier's ability to limit its liability under its bill of lading and the liability itself. *See General Elec. Co. v. MV NEDLLOYD,* 817 F.2d 1022, 1024 (2d Cir.1987) (§ 1304 as ceiling and floor of liability), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 661 (1988).

*See Seguros "Illimani" S.A. v. M/V POPI P,* 929 F.2d 89, 92 (2d Cir.1991); *Roco Carriers, Ltd. v. M/V NURNBERG EXPRESS,* 899 F.2d 1292, 1295 (2d Cir.1990); *National Resources Trading, Inc. v. Trans Freight Lines,* 766 F.2d 65, 68 (2d Cir.1985); *Colgate Palmolive Co. v. S/S DART CANADA,* 724 F.2d 313, 315 (2d Cir.1983), *cert. denied,* 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984); *Leather's Best, Inc. v. S.S. MORMACLYNX,* 451 F.2d 800, 808 (2d Cir.1971).

1. On the record before the Court, it is presumed that the rights and liabilities existing between the defendant and third party plaintiff, Hyundai, and third party defendant Land Bridge, which has offices and places of business in New Jersey, are governed by the law of the State of New Jersey and not by COGSA. An action against a terminal for the negligent loss of cargo is a state claim governed by state law and does not fall within federal maritime jurisdiction.

■ Numerous discretely packaged items can be placed in a single container, raising the question of whether the container itself was the "package" for COGSA liability-limiting purposes. The Second Circuit recently resolved the "container as COGSA package" problem in favor of shippers and against carriers and ships. In *Monica Textile Corp. v. S.S. TANA*, noting the inherent ambiguity created when a bill of lading refers to both containers and other units susceptible of being COGSA packages, the Second Circuit held as a general rule that "where the bill of lading discloses the contents of the container, then the container is not a COGSA package." 952 F.2d 636, 641 (2d Cir.1991). *See also Binladen BSB Landscaping v. M.V. NEDLLOYD ROTTERDAM*, 759 F.2d 1006, 1015 (2d Cir.) (general reluctance to treat container as COGSA package because of unduly limiting liability only overridden when bill of lading does not clearly indicate alternative number of packages within container), *cert. denied*, 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985); *Smythgreyhound v. M/V "EURYGENES"*, 666 F.2d 746, 753 (2d Cir.1981) ("bright line rule" that when contents of container are disclosed in bill of lading, container is not COGSA package); *Mitsui & Co. v. America Export Lines, Inc.*, 636 F.2d 807, 821 (2d Cir.1981) (presumption that container is not COGSA package).

This general rule applies even when the bill of lading form explicitly states as a condition of the contract that the term "package" shall include containers stuffed and sealed by the merchant or his agent, and that the liability is explicitly limited to $500 with respect to the contents of each container, because bills of lading are recognized to be adhesion contracts whose ambiguous terms must be resolved against the carrier. *Monica Textile*, 952 F.2d at 641–43.

Judy–Philippine contracted to purchase three shipments of children's garments from its supplier in Hong Kong, the PiRa Company ("PiRa"). The clothes were made by PiRa's factory in Hong Kong, Accoship Limited, and were loaded into four containers and sealed at the PiRa factory. Judy–Philippine arranged with Pac Bridge for the transport of the containers to the Port of New York.

■ In the matter at hand, the *Monica Textile/Mitsui* presumption is triggered and the COGSA liability limitations are extended to each of the 1,542 cartons rather than to the four containers, because the bills of lading expressly describe the contents of each container in terms of cartons, that is, freight units susceptible of being COGSA packages. Since Judy–Philippine alleges less than $500 per carton in damages, it is necessary to identify the applicable measure of damages consistent with COGSA § 1304 to determine the extent of the defendants' liability.

In *Internatio, Inc. v. M.S. TAIMYR*, 602 F.2d 49 (2d Cir.1979), the Second Circuit discussed at length the measure of damages to be employed in lost cargo cases under COGSA and read COGSA § 1304(5) as providing:

> that "(i)n no event shall the carrier be liable for more than the amount of damage actually sustained." This comports with the long-established principle of contract law stated by Mr. Justice Holmes in *Chicago, Milwaukee & St. Paul Railway v. McCaull–Dinsmore Co.*, 253 U.S. 97, 100, 40 S.Ct. 504, 504–05, 64 L.Ed. 801 (1920):
>
> > The rule of the common law is ... an embodiment of the plain fact that the actual loss caused by a beach of a contract is the loss of what the contractee would have had if the contract had been performed....

*Internatio*, 602 F.2d at 50. *See also Kanematsu–Gosho Ltd. v. M/T MESSINIAKI AIGLI*, 814 F.2d 115, 118 (2d Cir.1987) (fair market value method not only measure but held to be more appropriate measure of actual loss there than plaintiff's asserted "exceptional measure of damages").

Like plaintiff Internatio, Judy–Philippine relies on *The Ansaldo San Giorgio I v. Rheinstrom Bros. Co.*, 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016 (1935) (improperly stowed barrels of cherries in brine arrived in bad condition), for the proposition that it

is entitled to recover the market value of the goods at the time and place the vessel arrived at its destination. There the Court stated, "[t]he measure of the shipper's recovery is *normally* the market value of the goods at destination, in like condition as they were when shipped, on the date when they should have arrived." *Id.* at 496, 55 S.Ct. at 484 (emphasis added).

In *Internatio,* the Second Circuit rejected this interpretation of *The Ansaldo San Giorgio I* by noting,

> the Court was not establishing a special rule of damages for maritime cases, in derogation of the ordinary contract rule. It merely was indicating the way in which a shipper's loss would "normally" be measured. Such a method of measurement is not an end in itself, for as the Court has stated in *Illinois Central Railroad v. Crail,* 281 U.S. 57, 64–65, 50 S.Ct. 180, 181, 74 L.Ed. 699 (1930):
>
>> The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to if, for special reasons, it is not exact *or otherwise not applicable.*

*Internatio,* 602 F.2d at 50 (citation omitted).

The other cases cited by Judy–Philippine include the same qualification on the use of the market value measure of damages in cases of this kind as was expressed in *Internatio.* In *St. Johns N.F. Shipping Corp. v. S.A. Companhia Geral Commercial Do Rio De Janeiro,* 263 U.S. 119, 125, 44 S.Ct. 30, 31, 68 L.Ed. 201 (1923) (barrels of rosin jettisoned in during storm), the Court stated that *"[g]enerally,* the mea-

sure of damages for loss of goods by a carrier when liable therefor is their value at the destination to which it undertook to carry them," (emphasis added); in *Thyssen, Inc. v. S.S. FORTUNE STAR,* 777 F.2d 57, 61 (2d Cir.1985) (galvanized steel pipe badly damaged while in transit), the Second Circuit quoted Judge Learned Hand from *Weirton Steel Co. v. Isbrandtsen–Moller Co.,* 126 F.2d 593, 594 (2d Cir.1942), saying that " '(t)he *ordinary rule* is indeed that damages for injury to goods while in possession of a carrier are to be computed at the difference between the sound market value at destination and the value as damaged,' adding, '[t]hat is obviously the right measure where the consignee buys the goods for resale which is the ordinary case' " (emphasis added)[2]; and in *Seguros Banvenez, S.A. v. S/S OLIVER DRESCHER,* 761 F.2d 855, 860–61 (2d Cir.1985) (improperly stowed cranes washed overboard), the Second Circuit again noted that "[t]he correct measure of damages ... is the amount necessary to put the injured parties in the exact position they would have been in had there been no breach. In loss of cargo cases, this *generally* means the market value of the goods at the time and place they were to have been delivered" (emphasis added and citations omitted).

In *Internatio,* an importer brought an action against a carrier to recover for a defective shipment of cocoa beans. Upon the arrival of the shipment at Philadelphia, 128 bags of beans were missing and 2000 bags were torn or stained, resulting in a loss of 23,454 pounds of beans. *See* 602 F.2d at 50. The market price of the cocoa beans in Philadelphia on the day of arrival

---

**2.** The Second Circuit, however, distinguished *Thyssen* from *Weirton* on the ground that the tin plate in the latter case was

intended for manufacture by the shipper-consignee, not for immediate resale, and the [tin plate] had been reconditioned at roughly one-tenth of the amount awarded by the district court. Moreover, the only evidence offered by the plaintiff in support of the higher measure of damages was its surveyor's testimony concerning what price the plate would bring if it was sold as plate, without reconditioning. In order to avoid a windfall to the plaintiff, the court thus demanded evidence that the product manufactured had in fact sold for

less than goods manufactured from undamaged plate.

*Thyssen,* 777 F.2d at 62. In contrast, the damaged steel in *Thyssen* was resold without reconditioning, and the plaintiff presented evidence regarding the amount for which the steel was resold. *Id.* On that record, the Second Circuit affirmed an award of compensatory damages, reflecting the difference between the contract price at which the undamaged pipe was to be sold to a customer and the depreciated price of the damaged pipe at which it was actually sold, plus the surveyor's fee to establish the damage. *Id.* at 59, 62.

was $2.01 per pound, but the contract price was $.9172 per pound for resale by Internatio to M & M Mars, Inc. *See id.*

The Second Circuit held that the market value measure was not applicable there "because it would result in a recovery greater than the loss suffered." *Id.* The loss of the $.9172 per pound price was the only loss proved by Internatio.

> If, as might have been expected in light of the substantial increase in the price of cocoa between the time of contracting and the time of delivery, M & M had required Internatio to enter the market to purchase cocoa to make up the deficiency, then Internatio would have been entitled to damages measured by the existing market price. But the district court found, and the evidence clearly showed, that "plaintiff was unable to prove that it obtained a replacement for this cocoa shipment" and that "(a)pparently Mars did not hold plaintiff liable for any damages."

*Id.* at 50–51.

█ Therefore, while generally appropriate, the market value measure of damages is not the exclusive measure to be used in lost cargo cases. The market value measure is the appropriate measure only if the injured party can establish that it yields the amount necessary to put the injured party in the exact position it would have been in had there been no breach, and that it would not result in a recovery greater than the loss suffered. For Judy–Philippine to succeed on its claim that the market value measure of damages should be applied in the matter at hand, it must establish that the market value of the goods in question represents the actual loss it suffered. *See id.* at 50.

*The Motion for Summary Judgment is Denied*

"Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). 'As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party.' However, where the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991) (citations omitted). As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991); *see also Bay*, 936 F.2d at 116.

Judy–Philippine's motion for summary judgment must be denied for the reasons set forth in the December 23, 1991 Opinion of the Court. *Judy–Philippine*, 781 F.Supp. at 253. While the Court noted Judy–Philippine had alleged damages of $34,514.45 in its Amended Complaint and submitted documents supporting the figure of $66,852.00, the Court denied the motion for summary judgment on the issue of the measure of damages because "[t]he defendants contest this amount and, absent further evidence on the question of valuation, summary judgment on the issue of damages is not proper at this juncture. *Hartford Fire Ins. [Co. v. M/V SAVANNAH]*, 756 F.Supp. [825,] 829 [ (S.D.N.Y.1991) ]." *Id.* at 260.

According to Judy–Philippine the proposed amendment of the damages figure resolves the matter, alleging that the Court "reserved decision as to damages because of a discrepancy between the amount demanded in the Complaint ($34,514.45) and the amount demanded in plaintiff's motion for summary judgment ($66,852.00)." Kingsley Aff. 1–2. However, this misstates the Court's reasoning and conclusion regarding the issue of damages. The amounts contested and not sufficiently established to justify granting Judy–Philippine's previous motion for summary judg-

ment were *both* the $34,514.45 and $66,-852.00 figures, and they continue to be disputed on the present motion.

Pac Bridge argues that Judy–Philippine:

has not provided any evidence that [the market value] was its loss. The price list is speculative at best as no evidence has been provided that this is the actual price of the goods nor the price at which plaintiff would sell the goods. The possibility exists that the goods could be discounted, or that the price list was a guideline or even that the goods would not have been sold at all.

Pac Bridge Mem. 4–5.

Hyundai contends that the only new information added to the record on this motion is a statement by Judy–Philippine's counsel regarding the claims calculations he prepared that were based on price lists marked as an exhibit at the deposition of Angel Kwan. However, "(t)he deposition of Angel Kwan is devoid of any testimony to authenticate this document or establish plaintiff's damages.... As there is no authentication they may not be considered on this motion." Hyundai Mem. 2. The fact that Judy–Philippine's witness, Angel Kwan, identified the price lists at a deposition is not sufficient to authenticate these documents or to establish Judy–Philippine's damages.

Applying the requirements of Rule 56 as interpreted by *Bay* and *Binder* to this record, the ambiguities and inferences drawn from the underlying facts must be resolved in favor of the defendants and present a genuine issue for trial.

Judy–Philippine has failed to satisfy the burden of proof imposed by Rule 56(c) of showing that there is no genuine issue as to any material fact regarding the amount of damages for which the defendants are liable, and that it is entitled to a judgment of $66,852.00 as a matter of law on the market value measure of damages.

*Conclusion*

For the reasons set forth above, Judy–Philippine's motion to amend is granted

and motion for summary judgment is denied.

It is so ordered.