**COMMERCIAL UNION INS. CO., Plaintiff,**

v.

**M.V. BREMEN EXPRESS, et al., Defendants.**

**No. 96 Civ. 8246(PKL).**

United States District Court, S.D. New York.

Aug. 17, 1998.

Maloof & Browne, LLP, New York City (David T. Maloof, Lawrence C. Browne, of counsel), for Plaintiff.

Cichanowicz Callan & Keane, New York City, (Joseph DeMay, Paul M. Keane, Wei–Nuoo Li, of counsel), for Defendant Nippon Yusen Kaisha.

John L. Meunkle, Garden City, NY, for Defendant Current Carrier Inc.

### OPINION AND ORDER

LEISURE, District Judge.

Plaintiff Commercial Union Insurance Company ("Commercial")[1] brings this admiralty action against defendants Current Carrier Incorporated ("Current Carrier"), Nippon Yusen Kaisha ("NYK Line"), and the M/V Bremen Express. The following motions are before the Court: (1) NYK Line's motion to dismiss the Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure; (2) NYK Line's motion in the alternative for summary judgment against

---

**1.** Commercial is the insurer and subrogee of the original real party in interest, Derby Internation-al Corporation ("Derby"), d/b/a Raleigh U.S.A. Bicycle Company ("Raleigh").

Commercial pursuant to Fed.R.Civ.P. 56; and (3) Commercial's cross-motion for summary judgment against NYK Line and Current Carrier.

## BACKGROUND

Commercial is a British insurance company that underwrites international shipments of goods by sea. NYK Line is a Japanese shipping company that provides international carriage of goods by sea. Current Carrier is a New Jersey trucking company engaged in the common carriage of merchandise by truck for hire. The M.V. Bremen Express is the maritime vessel that NYK Line used to ship the goods at issue in this action.

On March 3, 1996, Derby delivered a shipper-packed container[2] of bicycles to NYK Line at Huangpu, China. The container was supposed to have been shipped to L.L. Bean and Company in Portland, Maine. However, due to an error, the address of Raleigh's Eastern Distribution Center in Kenilworth, New Jersey, was listed as the "place of delivery". The intermodal[3] bill of lading governing this shipment (the "NYK B/L") provided for NYK Line to carry the container overland from Huangpu to Hong Kong; by sea from Hong Kong to New York;[4] and overland from New York to Kenilworth. *See* Exhibit C ("Exh. C") to Declaration of Paul M. Keane ("Keane Dec.").

NYK Line provided its own shipping from Huangpu to Port Elizabeth and sub-contracted with Current Carrier to provide service from Port Elizabeth to Kenilworth. Current Carrier issued a separate bill of lading (the "Current B/L") to govern this portion of the journey. The Current B/L is the short form

of the Uniform Straight Bill of Lading (Domestic), a standard transport document governing domestic trucking transactions in the United States.[5] The parties agree that NYK Line carried the container to Port Elizabeth, as planned, and transferred custody to Current Carrier. They further agree that on April 11, 1996, Current Carrier transported the container from Port Elizabeth to Kenilworth and tendered delivery to Raleigh. What happened thereafter remains in dispute.

Commercial alleges that Raleigh's Warehouse Manager, Tony Baird, broke the seal of the container and discovered that the bicycles inside were intended for L.L. Bean in Maine. Commercial further claims that Baird rejected delivery of the bicycles, re-sealed the container, and directed Current Carrier's driver, Rico Blot, to re-deliver the goods to Maine. Commercial asserts that Blot then carried the container to a section of lot approximately one hundred yards away and left the container with other inventory outside Current Carrier's building.[6]

The parties agree that on April 11, 1996, Current Carrier's president, William Carracino, was out ill. Commercial claims that in Carracino's absence, the container was left unguarded in Current Carrier's lot. Commercial alleges that when Carracino returned to work on April 26, 1996, he found the container and logged it into Current Carrier's inventory. The following morning, Commercial claims, Carracino discovered that the container was missing.

Current Carrier offers a very different version of what it believes occurred in con-

---

**2.** In admiralty parlance, a "container" is a large reusable metal receptacle into which cargo is placed for transportation. A closed container can be transported by ship or truck without having to handle the cargo inside. The contents of a shipper-packed container typically are not seen by the carrier until the container is opened by the consignee at the place of delivery. *See CTI–Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 380–81 (2d Cir.1982).

**3.** "A multimodal or intermodal cargo or shipment is a cargo or shipment that moves by water and land (or air) transportation on a single bill of lading." 2 Schoenbaum, *Admiralty and Maritime Law*, § 10–4 (2d ed.1994).

**4.** The M.V. Bremen Express called at Port Elizabeth, New Jersey. In the maritime industry, Port Elizabeth is considered part of the Port of New York.

**5.** The Current B/L incorporates by reference the terms and conditions of Uniform Straight Bill of Lading (Domestic).

**6.** Raleigh's Eastern Distribution Center Warehouse is located in the same building complex in Kenilworth as Current Carrier.

nection with the shipment. Current Carrier alleges that, upon tender of delivery, Raleigh signed for the container and directed Blot to leave the container in the lot outside Raleigh's warehouse. Current Carrier's position is that no Raleigh employee informed Blot that the container had been delivered improperly nor that the cargo inside actually belonged to L.L. Bean. Current Carrier claims that Carracino was not informed of the mistake and told that he would have to re-ship the cargo to Maine until much later.

In support of its version of the facts, Commercial submits an unsigned copy of Current Carrier's delivery invoice and an unsigned copy of the Current B/L. *See* Exhibits 4 and 5 to Reply Affidavit of Lawrence C. Browne ("Browne Aff."). In opposition, Current Carrier submits a signed version of Current Carrier's delivery invoice, which it contends is the true copy. *See* Exhibit C to Affidavit of John L. Meunkle. Current Carrier alleges that Commercial's copy is truncated to omit the signature of a Raleigh employee at the bottom of the page.

The parties agree that on the morning of April 27, 1996, Carracino telephoned Richard Manz, Branch Manager of Raleigh's Eastern Distribution Center, to ask if the bicycles had been taken to Maine by another trucking company. Manz replied that he did not know of any re-shipment. Carracino then contacted the Kenilworth police and filed a report concerning the suspected theft. On May 1, 1996, the container was found empty in the Bronx by New York City police. Pursuant to an insurance agreement, Commercial compensated Raleigh for losses totaling $26,772.

■ On November 1, 1996, Commercial filed a Complaint in this Court as Raleigh's subrogee. Jurisdiction is proper under the Court's admiralty and maritime jurisdiction. *See* 28 U.S.C. § 1333(1).[7] On November 20, 1996, NYK Line answered and filed a Cross–Claim against Current Carrier. Current Carrier answered both the Complaint and the Cross–Claim on March 18, 1997. On January 9, 1997, NYK Line filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(3), alleging that a forum selection clause contained in the NYK B/L rendered this Court an improper venue for the instant action. In the alternative, NYK Line moved for summary judgment pursuant to Fed.R.Civ.P. 56. Commercial, in turn, filed a cross-motion for summary judgment against NYK Line and Current Carrier.

In an Order dated May 15, 1997, the Court granted permission for Current Carrier's original counsel to withdraw. Prior to counsel's withdrawal, Current Carrier had not responded to the pending motions. In an Order dated June 26, 1997, the Court ordered Current Carrier to retain new counsel by July 18, 1997, and to submit opposition papers to the pending motions on or before August 1, 1997. Current Carrier retained counsel on July 18, 1997, but did not file its opposing papers until December 19, 1997, approximately four and one-half months after the date fixed by the Court.

## DISCUSSION

### I. NYK Line's Motion to Dismiss

■ NYK Line bases its motion to dismiss on a forum selection clause contained in the NYK B/L. Article 2 of that document provides:

> The contract evidenced by or contained in this Bill of Lading shall be governed by Japanese law except as otherwise provided herein, and any action thereunder shall be brought before the Tokyo District Court in Japan.

*See* Exh. C to Keane Dec. If this clause were valid and enforceable, the Court would grant NYK Line's motion to dismiss. However, as the Court determines that the clause is inapplicable to the instant case under the terms of the NYK B/L, the Court denies NYK Line's motion to dismiss.

---

7. Accordingly, the issue of liability is determined under federal law. *See Leather's Best, Inc., v. S.S. Mormaclynx*, 451 F.2d 800, 812 (2d Cir. 1971) (noting, "Since this is a suit within the admiralty jurisdiction [of the Court], the standard for judging ... liability is a matter of feder-al law.") (Friendly, J.); *see also Minemet, Inc. v. M.V. Mormacdraco*, 536 F.Supp. 769, 770 (S.D.N.Y.) (Weinfeld, J.), *aff'd mem.*, 714 F.2d 115 (2d Cir.1982); *Tokio Marine Management v. M/V Zim Tokyo*, No. 91 Civ. 0063 (PKL), 1993 WL 322869 *4 (S.D.N.Y. Aug.17, 1993).

In the leading case of *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court held that a forum selection clause in a maritime bill of lading is "prima facie valid" and "should control absent a strong showing that it should be set aside." *Bremen*, 407 U.S. at 7, 10, 92 S.Ct. 1907. In a subsequent decision, the Court noted that, even when a forum selection clause designates a particularly remote forum, "[T]he party seeking to defeat enforcement bear[s] a heavy burden of proof." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)(quoting *Bremen*, 407 U.S. at 17, 92 S.Ct. 1907). The party contesting enforcement of a forum selection clause must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. at 15, 92 S.Ct. 1907.

Under *Bremen*, the forum selection clause in the NYK B/L is prima facie enforceable. However, this Court's analysis does not end with Bremen because the forum selection clause in the NYK B/L does not stand alone. Rather, Article 8 of the NYK B/L contains a liability clause that overrides the forum selection clause in particular instances. Article 8 provides, in pertinent part:

(i) For the Goods carried in through transportation, if it is established by the Merchant that the loss of or damage to or in connection with the Goods occurred ... during the period from the time the Goods arrived at the sea terminal at the port of loading to the time when they left the sea terminal at the port of discharge and also occurring during any previous or subsequent carriage by sea or inland waterways, the carrier shall be responsible for such loss or damage subject to the provisions of this Bill of Lading .... (ii) *Notwithstanding Article 2 hereof,* for the Goods carried in through transportation, if it is established by the Merchant that loss of or damage to or in connection with the Goods occurred while the goods were in custody of carrier(s) by land or air, *the Carrier shall be responsible for such loss or damage to the extent to which such carrier(s) by land or air are responsible under the terms and conditions of the transport document(s) of the carrier(s)* ....

*See* Exh. C to Keane Dec. (emphasis supplied). As it is undisputed that the loss of goods in the instant case occurred on land, the Court determines that Article 8 renders Article 2 inapplicable to the instant action.

In finding Article 2 inapplicable, the Court construes the NYK B/L in favor of Commercial. The Court of Appeals for the Second Circuit has held that maritime bills of lading are considered contracts of adhesion and must be construed against the drafting party. *See Allied Chemical International Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 482 (2d Cir.1985). Thus, any uncertainty regarding the relationship between Article 2 and Article 8 of the NYK B/L must be resolved against NYK Line. Following this maxim of contractual construction, the Court finds that Article 8 supercedes Article 2 when the loss of cargo occurred on land, as it did here.

NYK Line's use of the word "notwithstanding" in Subsection (ii) of Article 8 indicates the predominance of Article 8 over Article 2. Webster's Third New International Dictionary defines "notwithstanding" as "[w]ithout prevention or obstruction from or by: in spite of." *Webster's Third New International Dictionary* 1545 (1981). Thus, Article 8 of the NYK B/L provides that Subsection (ii) operates in land-loss situations in spite of the forum selection provision of Article 2. The internal structure of Article 8 confirms that this is the only reasonable interpretation of the NYK B/L. The different methods of fixing liability for water and land loss are discussed sequentially in Subsections (i) and (ii). This structure suggests an exclusive relationship between the two subsections. Particularly when coupled with the word "notwithstanding", the sequence indicates that, when it applies, Subsection (ii) supercedes Subsection (i). Article 2 applies only in Subsection (i) situations. Since the instant case implicates Subsection (ii), Article 2 does not apply.

Article 8 is not simply a limitation-of-liability clause. If it were, NYK Line would not have enumerated sequentially the different

means of fixing liability for water and land loss. Rather, NYK Line simply would have stated that its liability for goods lost while in the possession of a subcontractor was limited to the amount of that subcontractor's liability. That NYK Line did not so state suggests that NYK Line intended Article 8 to do more than merely limit liability; NYK Line instead intended Article 8 to specify the means of fixing liability in particular situations. NYK Line easily could have provided that the forum selection clause remained effective despite the applicability of the subcontractor's bill of lading. That NYK Line did not so provide suggests that NYK Line did not contemplate the operation of the forum selection clause in situations to which Subsection (ii) applies.

■ It is undisputed that the instant action arises out of a land-loss situation. Therefore, construing the NYK B/L in Commercial's favor, the Court finds that the forum selection clause of Article 2 does not apply to the instant dispute under the terms of the NYK B/L. Accordingly, NYK Line's motion to dismiss is denied.[8]

## II. The Summary Judgment Motions

### A. General Standard for Summary Judgment

A moving party is entitled to summary judgment if the Court determines that (1) there exists no genuine issue of material fact to be tried, and (2) the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *see also Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of showing that no genuine issue of fact exists to be tried. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90

S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Court's function in adjudicating summary judgment motions is not to try issues of fact, but instead to determine whether such an issue exists. *See Sutera v. Schering Corp.,* 73 F.3d 13, 15–16 (2d Cir.1995). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Holt,* 95 F.3d at 129.

### B. Local Rule 56.1

■ As the Second Circuit has explained:

> Pursuant to 28 U.S.C. § 2071(a) and Rule 83 of the Federal Rules of Civil Procedure, district courts have the power to enact Local Rules governing their practice, procedure, and conduct of business. Local Rules have the force of law, to the extent that they do not conflict with rules prescribed by the Supreme Court, Acts of Congress, or the Constitution.

*Somlyo v. J. Lu–Rob Enterprises, Inc.,* 932 F.2d 1043, 1046 (2d Cir.1991) (internal citations omitted). Local Rule 56.1 ("Rule 56.1") of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York provides:

> (a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

> (b) The papers opposing a motion for summary judgment shall include a sepa-

---

8. Denial of NYK Line's motion to dismiss does not remove the jurisdictional basis for this action. It is well-settled that federal courts have jurisdiction over intermodal bills of lading where the maritime character of the bill predominates. *See Austracan (U.S.A.) v. Neptune Orient Lines, Ltd.,* 612 F.Supp. 578, 585 (S.D.N.Y.1985); *see also Puerto Rico Maritime Shipping Auth. v. Luallipam, Inc.,* 631 F.Supp. 1472, 1476 (D.P.R.1986)

(collecting cases). That the NYK B/L, by its terms, makes the conditions of the Current B/L applicable to this particular dispute does not obviate the basis for the Court's jurisdiction. The NYK B/L continues to serve as a conduit for the application of the Current B/L. Accordingly, the NYK B/L continues to provide the basis for jurisdiction in this Court.

rate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

(c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Rule 56.1.

■ Commercial included in its moving papers a statement in compliance with Rule 56.1. Current Carrier did not respond to this statement. Therefore, pursuant to Rule 56.1(c), the Court deems Current Carrier to have admitted the material facts set forth by Commercial.

### C. *Commercial's Motion Against Current Carrier*

■ The Court finds that there exists no genuine issue of material fact to be tried and that Commercial is entitled to judgment against Current Carrier as a matter of law. Clauses 4(a) and 4(b) of the Uniform Straight Bill of Lading (Domestic), made applicable to Current Carrier by the Current B/L, provide that where a consignee rejects delivery of cargo, the shipper must exercise reasonable care over the cargo as a warehouseman.[9] *See* Exh. 11 to Browne Aff. Current Carrier admits that Baird refused delivery of the container and told Blot that it had to be delivered to L.L. Bean in Maine. *See* Commercial's 56.1 Statement ¶ 37. Carracino confirmed this in a subsequent phone call. *See id.* ¶ 39. The container remained unnoticed and unguarded for sixteen days before Carracino noted that it had vanished. *See id.* ¶¶ 46, 48, 50, 55. The Court thus concludes that Current Carrier did not satisfy its duty under the Current B/L to exercise reasonable care over the container as a ware-

houseman. Current Carrier failed to provide adequate supervision over the container and this breach of its contractual duty caused Commercial's loss. Therefore, the Court grants Commercial's motion for summary judgment against Current Carrier.[10]

### D. *The Motions Between Commercial and NYK Line.*

■ NYK Line moves and Commercial cross-moves for summary judgment. The Court grants Commercial's cross-motion. As Current Carrier's principal, NYK Line is liable for Current Carrier's failure to satisfy its contractual duty of care. An international shipper is liable for cargo lost while in the possession of a local subcontractor. *See Austracan*, 612 F.Supp. at 586 (S.D.N.Y.1985) (holding international shipping company liable for error of its agent at port). The Court has determined, *supra*, that the contents of the container were lost while in Current Carrier's possession. Therefore, NYK Line is liable for the loss.

NYK Line's liability is reinforced by Article 8 of the NYK B/L, wherein NYK Line assumed responsibility for losses to the extent that its subcontractor was responsible under the relevant contract. *See* Exh. C to Keane Dec. As noted above, clauses 4(a) and 4(b) of the Uniform Straight Bill of Lading (Domestic) were incorporated into the Current B/L; therefore, under Article 8, they apply to NYK Line as well. Under these clauses, Current Carrier had a duty to care for the container as a warehouseman following Raleigh's rejection of the container. Current Carrier breached this duty, leading to Commercial's loss. Under Article 8, NYK Line also is responsible for this loss.

There exists no genuine issue of fact that would prevent the Court from granting summary judgment in favor of Commercial. There is no question that Commercial is the

---

9. Alternatively, Clauses 4(a) and 4(b) entitle the shipper to store the goods in a public warehouse or to sell the goods at public auction after giving due notice to the consignor. *See* Exh. 11 to Browne Aff. However, since Current Carrier chose to retain custody of the container after its rejection by Raleigh, Current Carrier was required to exercise reasonable care over the container as a warehouseman.

10. As the Court grants Commercial's motion for summary judgment against Current Carrier, it does not address the merits of Commercial's motion to strike the opposition papers of Current Carrier as untimely.

real party in interest. Commercial has submitted competent documentary evidence that establishes its right to recover as Raleigh's subrogee, including a copy of Commercial's subrogation receipt with Raleigh. *See* Exhibit 8 to Browne Aff. The receipt explicitly states that Commercial "is subrogated to all of our rights of recovery on account of any and all such loss or damage from the carriers ... that may be liable therefor...." *Id.* NYK Line's unsupported assertions to the contrary do not create a genuine issue of triable fact. *See Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (stating that "conclusory allegations will not suffice to create a genuine issue").

 Nor does a genuine issue exist with respect to the contents of the container. NYK Line has submitted substantial evidence confirming the contents of the container, including sales invoices, affidavits of the various parties, and a police report. *See* Exhibits 2, 4 to Browne Aff. These indicate that there were 194 bicycles in the container. Moreover, it is well-settled that the weight listed on a carrier's bill of lading is prima facie evidence of a container's contents. *See Hartford Fire Ins. Co. v. M.V. Savannah*, 756 F.Supp. 825, 828–29 (S.D.N.Y.1991) (citing *Westway Coffee Corp. v. M.V. Netuno*, 675 F.2d 30, 33 (2d Cir.1982)); *see also Judy–Philippine Inc. v. S/S Verazano Bridge*, 781 F.Supp. 253, 259 (S.D.N.Y.1991). Both the NYK B/L and the Current B/L clearly list a weight consistent with a cargo of 194 bicycles. *See* Exhibits 3, 5 to Browne Aff. Finally, the undisputed invoice value of a cargo is sufficient to establish an amount for the calculation of damages. *See Centennial Ins. Co., v. M/V Constellation Enterprise*, 639 F.Supp. 1261, 1265 (S.D.N.Y.1986) (Weinfeld, J.). In the instant action, Commercial has demonstrated the value of the lost cargo through reliable documentary evidence. The sales invoice between Raleigh and L.L. Bean lists the price of the bicycles as $26,772. *See* Exhibit 9 to Browne Aff. The insurance payment receipt between

Commercial and Raleigh confirms this figure. *See* Exhibit 8 to Browne Aff. Since this amount is uncontroverted by NYK Line, it suffices to prove the extent of Commercial's damages.

Current Carrier violated its contractual duty of care and Commercial has proven that it suffered damages as a result of this breach. Pursuant to the applicable law and Subsection (ii) of Article 8 of the NYK B/L, NYK Line also is liable for these damages. Accordingly, the Court grants Commercial's motion for summary judgment against NYK Line.[11]

### CONCLUSION

NYK Line's motion to dismiss is HEREBY DENIED. NYK Line's motion for summary judgment is HEREBY DENIED. Commercial's motion for summary judgment against both NYK Line and Current Carrier is HEREBY GRANTED.

**SO ORDERED.**

---

**11.** Obviously, since the Court grants Commercial's motion for summary judgment, the Court denies NYK Line's motion for the same.